IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

RAY CLIFTON TAYLOR,

        Plaintiff,

vs.                            No. 06-2522-An/V

MARK LUTTRELL, et al.,

        Defendants.

_____

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
NOTICE OF APPELLATE FILING FEE
AND
ORDER IMPOSING SANCTIONS PURSUANT TO 28 U.S.C. § 1915(g)

_____

On August 7, 2006, Plaintiff Ray Clifton Taylor, booking number 5113760, who was, at the time, an inmate at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983. (Docket Entry ("D.E.") 1.) The case was reassigned to this judge on May 21, 2008. (D.E. 9.)[1] The Clerk shall record the defendants as Shelby County Sheriff Mark Luttrell; Shelby County;[2] and ARAMARK

---

[1] Plaintiff's copy of this order was returned as undeliverable by the post office on June 11, 2008, as he was released from his most recent prison. (D.E. 10.) Plaintiff has not provided the Clerk with a forwarding address.

[2] As Plaintiff has apparently sued Defendant Luttrell in both his individual and official capacity, the Clerk is directed to add Shelby County as an additional defendant. Hafer v. Melo, 502 U.S. 21, 25 (1991).

Corporation, which is named in the complaint as "Airmart Food Service."[3]

I.   Analysis of Plaintiff's Claims

The complaint alleges that Plaintiff has been at the Jail since May 3, 2005 in unsanitary and hazardous conditions. Specifically, Plaintiff alleges that Defendant Airmark does not keep the food preparation area clean. On November 19, 2005, Plaintiff allegedly found two rocks in his black eyed peas, resulting in an unspecified injury. On June 13, 2006, Plaintiff noticed a trace of a red sauce in his breakfast grits that looked like the food that had been served for dinner the previous day. Plaintiff also alleges that the meal trays sometimes have foul-smelling water trapped between the layers, which may put him at risk for infectious diseases or food poisoning.

---

[3]   The complaint also purports to sue individuals identified only as "Shelby County Jail Staff and/or Administration" and "Medical Staff and/or Administration." However, service of process cannot be made on a fictitious party. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitation against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir. 1968). Thus, to the extent Plaintiff seeks to bring any complaint against any other individual or entity, he must identify the defendant and file a new lawsuit within the one-year statute of limitations applicable to § 1983 actions. Tenn. Code Ann. § 28-3-104(a).

The Court ordinarily would assess the civil filing fee, because the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), requires each prisoner bringing a civil action to pay the full filing fee of $350 required by 28 U.S.C. § 1914(a). In this case, however, Plaintiff was released from prison before any portion of the filing fee had been paid. Under these circumstances, the Sixth Circuit has held that, "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." McGore v. Wrigglesworth, 114 F.3d 601, 613 (6th Cir. 1997). Although the Court could dismiss this action due to Plaintiff's failure to notify the Clerk of his new address, that treatment is not appropriate in this case as this is the third complaint filed by Plaintiff, while a prisoner, that fails to state a claim. Under these circumstances, the motion for leave to proceed in forma pauperis is GRANTED.

2

Second, Plaintiff complains that, on October 17, 2005, he was sanctioned for a cell violation by having his mattress removed from his cell from 6:30 a.m. until 9:30 p.m. for a week. Plaintiff had to see the Jail doctor for pain in his back and chest, and the doctor directed that the mattress be returned immediately.

Third, Plaintiff complains he was given four towels upon his admission to the Jail and, since that time, the towels have not been properly washed. The towels were sent to the laundry, but he contends that they are dirty and damp when returned. Plaintiff also complains that he was threatened with discipline if he washed his underwear in the sink in the cell or hung his wet clothing up to dry. On one occasion, Plaintiff was written up and given ten (10) days in detention for hanging his damp socks up to dry.

Fourth, Plaintiff suffers from asthma and sarcoidosis,[4] and he asserts that "I have been refused medical attention on more than one occasion." On April 5, 2006, Plaintiff contends he had chest pains but Sergeant Davis and Lieutenant Anderson, who are not parties to this action, "refuse[d] medical attention." Although Plaintiff does not specify what Davis and Anderson refused to do, the Court presumes he means they did not call the medical department. On April 14, 2006, Plaintiff was having headaches and

_____

[4]    "Sarcoidosis is a chronic disease that affects multiple systems in the body. It is characterized by the buildup of immune-system cells in organs. These cells form small groups called granulomas, a type of inflammation of the involved tissues." http://webmd.com/a-to-z-guides/understanding-sarcoidosis-basics. "Usually, the disease is not disabling; most people with sarcoidosis live normal lives. In fact, in the majority of cases, the disease appears only briefly and disappears on its own. About 20% to 30% of people with sarcoidosis are left with some permanent lung damage, and in 10% to 15% of patients the disease is chronic. Although not common, death from sarcoidosis can occur in the disease causes serious damage to a vital organ." Id.

chest pains and had not received some prescribed medication. Officer Matthews and Sergeant Taylor, who are not parties to this action, allegedly refused Plaintiff medical attention because it was fifteen (15) to thirty (30) minutes before a shift change. Plaintiff contends that Jail medical staff were treating his condition lightly and did not send him to a lung specialist. Plaintiff also complains that he has been charged for medication and medical attention.

Fifth, Plaintiff alleges that Jail staff have hindered his access to the courts by confiscating ink pens in shakedowns and cell searches. Inmates are allowed to buy ink pens at the commissary, but they are seized and thrown away by Jail staff. On May 23, 2006, Officer Neal, who is not a party to this action, confiscated three of Plaintiff's pens. Two more pens were confiscated on July 19, 2006. Plaintiff also complains that indigent inmates are limited to two envelopes per week.

Sixth, Plaintiff contends there is inadequate ventilation at the Jail. Vents are located under the beds, where they are hard to clean, so they are dirty. Spiders and roaches often come through the vents. Sometimes Plaintiff has been housed in cells where the toilet did not flush, and sometimes his cell was flooded when the inmate next door flushed his toilet. Sometimes he was without hot or cold running water, and sometimes there were small leaks at the base of the walls or at the toilet seal. Plaintiff also alleges that, for a time, he was confined to his cell for twenty-three (23)

hours per day, with no exposure to the outside air. Sometimes there are fruit flies at the Jail.

Seventh, Plaintiff contends he has been retaliated against by officers and staff members because he has written many grievances and letters to the Jail administration, federal judges, other agencies, and interest groups. Plaintiff asserts, without elaboration, that money has been stolen from his trust fund account. Some money was restored after Plaintiff complained. On two occasions, food and batteries purchased from the commissary were taken from Plaintiff's cell during a shakedown. During a cell shakedown on July 19, 2006, Officer Mims, who is not a party to this action, scattered Plaintiff's legal papers over his bunk. Some of his papers were damaged and some folders were torn. Plaintiff complained to Sergeant Holmes, who is not a party to this action, but he "paid [Plaintiff] and [his] request no mind." At some point, Sergeant Branchard, who is not a party to this action, told Plaintiff "I have no win so I might as well face it," which Plaintiff interpreted as a threat. The context in which this statement was made is not provided.

Plaintiff also complains that the grievance procedure is not effective and inmates are limited in the number of grievances they can file.

The procedure for inmate disciplinary hearings is not impartial.

Plaintiff was denied access to the law library and the courts on several occasions. Sometimes there was no paralegal or

clerk available to assist Plaintiff at the law library. On several occasions, Counselor Oliver, who is not a party to this action, refused to honor Plaintiff's requests for legal materials or copies of documents. Plaintiff contends that he needed extended access to the law library because of his upcoming criminal trial. Jail staff also limit the number of copies they will make for Plaintiff, forcing him to make multiple requests. On July 26, 2006, Plaintiff complained to Chief Moore, who is not a party to his action, but the policies were not changed.

Finally, the delivery of Plaintiff's legal mail has sometimes been delayed.

Plaintiff seeks compensatory and punitive damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); <u>see also</u> 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirely.

The complaint contains no factual allegations about Defendant Luttrell. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." <u>Spruytte v. Walters</u>, 753 F.2d 498, 500 (6th Cir. 1985).

Defendant Luttrell cannot be held liable because of his position as Sheriff of Shelby County. There is no <u>respondeat</u>

superior liability under § 1983. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Id. (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, the complaint contains no allegations that Defendant Luttrell "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of Defendant Luttrell to perform a function he was legally obligated to perform, Doe v. Claiborne County, Tenn., 103 F.3d 495, 511-12 (6th Cir. 1996). The standard is not satisfied by allegations that a defendant mishandled a grievance or failed to investigate a complaint. Shehee, 199 F.3d at 300; see also George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about

a completed act of misconduct does not."). Therefore, even if it were assumed that the complaint alleges one or more constitutional violations, Defendant Luttrell could not be personally liable to Plaintiff.

Even if it were proven that some employee of the Shelby County or ARAMARK, not named a party to this action, committed a constitutional violation, it does not follow that Shelby County or ARAMARK can be held liable to Plaintiff. A local governmental entity "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 121 (1992); <u>see also</u> <u>Jett v. Dallas Indep. School Dist.</u>, 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental bodies); <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989) (rejecting simple vicarious liability for municipalities under § 1983); <u>City of St. Louis v. Praprotnik</u>, 458 U.S. 112, 122 (1988) (interpreting rejection of <u>respondeat</u> <u>superior</u> liability by <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978), as a command that "local governments . . . should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986) (same); <u>Stemler v. City of Florence</u>, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims against city and county

and holding that "in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or 'custom' of the municipality"). To establish municipal liability, a plaintiff must demonstrate

> (1) that the City pursued an official custom or policy of failing to adequately train, supervise, or discipline its officers in a particular matter, and (2) that such official policy or custom was adopted by the official makers of policy with "deliberate indifference" towards the constitutional rights of persons affected by the policy or custom.

Haverstick v. Financial Fed. Credit, Inc., 32 F.3d 989, 996 n.8 (6th Cir. 1994) (citing City of Canton, 489 U.S. at 387-88). Thus, "'a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."'" Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir. 1994) (citations omitted). The Sixth Circuit has applied this standard to claims against private corporations that operate prisons or provide services to prisoners. Thomas v. Coble, 55 F. App'x at 748-49; Street, 102 F.3d at 817-18; Johnson v. Corrections Corp. of Am., 26 F. App'x 386, 388 (6th Cir. 2001).

Although prisoners are not required to plead their theory of municipal or corporate liability with particularity, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality or corporate defendant on notice of the plaintiff's theory of liability, see, e.g., Fowler v. Campbell,

9

Civil Action No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); Yeackering v. Ankrom, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); Oliver v. City of Memphis, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. Raub v. Correctional Med. Servs., Inc., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); Clearly v. County of Macomb, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); Morningstar v. City of Detroit, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); Chidester v. City of Memphis, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). With the exceptions of Plaintiff's challenges to the grievance and disciplinary policies and the limitations on his access to the law library, the complaint in this case does not allege that Plaintiff's injury was the result of an unconstitutional policy or custom of Shelby County or ARAMARK.

Plaintiff also has no claim because of deficiencies in the grievance and disciplinary procedures. There is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's grievances. Pursuant to 42 U.S.C. § 1997e(b), "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title." See also Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003); Shehee, 199 F.3d at 300; Smith v. Corrections Corp. of Am., 19 F. App'x 318, 321 (6th

Cir. 2001) (holding that prisoner "had no constitutional right to
. . . disciplinary or grievance systems that met his standards");
Irvin v. Fluery, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D.
Mich. Oct. 16, 2007) ("[T]he Sixth Circuit and other circuit courts
have held that there is no constitutional right to access to an
institutional grievance procedure."; Mackey v. Carberry, No. 2:07-
cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007); Robertson
v. Montgomery County, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D.
Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty
interest in the grievance procedure."). The fact that there is no
effective grievance system for inmates at the Jail may be
sufficient to defeat a motion to dismiss the complaint, pursuant to
42 U.S.C. § 1997e(a), for failure to exhaust administrative
remedies, but it does not give rise to an independent cause of
action.[5]

 Plaintiff's complaints that he was denied access to the
law library, that his access to free copies and envelopes was
limited, that the delivery of his legal mail was delayed, and that

_____

 [5] The complaint in this case does not allege that any particular
disciplinary write-up was issued in retaliation for Plaintiff's exercise of his
First Amendment rights, that there was insufficient evidence to support any
adjudication of guilt, that Plaintiff's rights to due process were violated, or
that, as a result of any disciplinary conviction, Plaintiff was subjected to
unconstitutionally severe conditions of confinement. Therefore, the Court
construes the complaint as raising only a general claim of bias in the
adjudication of grievances. League of United Latin Am. Citizens v. Bredesen, 500
F.3d 523 (6th Cir. 2007) ("The court must construe the complaint in the light
most favorable to plaintiffs, accept all well-pled factual allegations as true
and determine whether plaintiffs undoubtedly can prove no set of facts consistent
with their allegations that would entitled them to relief. . . . Though decidedly
liberal, this standard does require more than bare assertions of legal
conclusions. . . . Plaintiff's obligation to provide the "grounds" of their
entitlement to relief requires more than labels and conclusions or a formulaic
recitation of the elements of the cause of action.").

his pens were confiscated are, in actuality, claims that Plaintiff was deprived of his First Amendment right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996); see also Bounds v. Smith, 430 U.S. 817, 822 (1977). The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds at 828. However,

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996); see also Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." Rodgers v. Hawley, 14 F. App'x 403, 409 (6th Cir. 2001) (citing Lewis v. Casey, 518 U.S. at 351-53); see also Hadix v. Johnson, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how Lewis altered the

12

"actual injury" requirement previously articulated by the Sixth Circuit). In <u>Pilgrim v. Littlefield</u>, 92 F.3d 413, 416 (6th Cir. 1996), the Sixth Circuit explained that "actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim."

In this case, the complaint does not allege that Plaintiff suffered any actual injury from the various restrictions on his access to the courts. The only lawsuit mentioned in the complaint is Plaintiff's criminal case, in which he was represented by counsel. Therefore, Plaintiff's right of access to the courts has been satisfied as a matter of law. <u>See, e.g.</u>, <u>Leveye v. Metropolitan Pub. Defender's Office</u>, 73 F. App'x 792, 794 (6th Cir. 2003); <u>Holt v. Pitts</u>, 702 F.2d 639 (6th Cir. 1983) (per curiam) ("By [plaintiff's] own admission, it is clear that counsel was appointed to represent him in both federal and state actions pending against him. As a matter of law, therefore, the state fulfilled its constitutional obligation to provide him with full access to the courts."). Although Plaintiff alleges isolated delays in the delivery to him of legal mail, there is no allegation that Plaintiff suffered any actual injury as a result. Finally, despite the limitations alleged in the complaint, Plaintiff filed two § 1983 actions concerning his conditions of confinement, including the instant case, and, by his own admission, was able to write numerous letters to public officials and interest groups.

Plaintiff's remaining claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. <u>See</u>

generally Wilson v. Seiter, 501 U.S. 294 (1991).[6] An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v.

---

[6]     Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). The scope of a detainee's Fourteenth Amendment rights are equivalent to those of a convicted inmate under the Eighth Amendment. Thompson, 29 F.3d at 242; Roberts, 773 F.2d at 723; see also Rankin v. Klevenhagen, 5 F.3d 103, 107 (5th Cir. 1993); Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993). See generally Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); Vineyard v. County of Murray, 990 F.2d 1207, 1211-12 (11th Cir. 1993); Gilland v. Owens, 718 F. Supp. 665, 682-83 (W.D. Tenn. 1989). Although Plaintiff was a pretrial detainee during the events set forth in the complaint, the Court will analyze Plaintiff's claims under Eighth Amendment principles because the rights of pretrial detainees are equivalent to those of convicted prisoners.

Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v. McKinney, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

Wilson, 501 U.S. at 304-05 (citations omitted; emphasis added); see also Thompson v. County of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994); Walker v. Mintzes, 771 F.2d 920, 925026 (6th Cir. 1985).

To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious

risk of which they should have known but did not, then they did not violate the Fourteenth Amendment.").

Applying these standards, Plaintiff's claims that there was grit or pebbles in his food on a single occasion, that once there was a trace of red sauce in his breakfast grits, that the meal trays are sometimes wet and water is trapped between layers of the trays, and that the laundry is done infrequently and improperly are too trivial to be actionable. The Supreme Court has recognized that "[t]here is, of course[,] a <u>de minimis</u> level of imposition with which the Constitution is not concerned." <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977); <u>see also</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir. 1999) (recognizing that "certain threats or deprivations are so <u>de minimis</u> that they do not rise to the level of being constitutional violations" and that the courts may "weed out" such "inconsequential actions"); <u>Dean v. Conley</u>, 20 F. App'x 294, 295 (6th Cir. 2001) ("The Constitution . . . does not provide an avenue of redress for <u>de minimis</u> events in the life of an inmate."); <u>A'la v. Cobb</u>, No. 98-5257, 2000 WL 303014, at *2 (6th Cir. Mar. 14, 2000) ("[S]ome level of significance is required in order for the actions of prison officials to implicate constitutional concerns. <u>De minimis</u> events simply do not state constitutional claims.").

The Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. <u>Cunningham v. Jones</u>, 567 F.2d 653, 656 (6th Cir. 1977); <u>see also</u> <u>Clark-Murphy v. Foreback</u>, 439 F.3d

280, 292 (6th Cir. 2006). "Food served to inmates need not be appetizing. The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs." Heinz v. Teschendorf, No. 05-CV-73470, 2006 WL 2700813, at *8 (E.D. Mich. Sept. 19, 2006). In this case, the complaint alleges that, on a total of two occasions over a fifteen-month period, the food served to Plaintiff was contaminated with a foreign substance. This deprivation does not rise to the level of a constitutional violation. Moore v. Curtis, 68 F. App'x 561, 562 (6th Cir. 2003) (isolated deprivations of food do not violate the Eighth Amendment); Sims v. Michigan Dep't of Corrections, 23 F. App'x 214, 216 (6th Cir. 2001) ("The fact that Sims may have been served one cup of fruit as part of a six-meal-per-day diet does not establish a deprivation of nutrition necessary to sustain his physical well-being. Furthermore, Sims did not allege that he was denied sufficient food on a daily basis or that he could not maintain his health based on the diet provided him even though one of the six meals he received per day may have consisted of one cup of fruit."); Rhinehardt v. Semeroz, No. 98-1588, 1999 WL 1021585, at *1 (6th Cir. Nov. 2, 1999) ("Loss of commissary food privileges is 'routine discomfort' that is 'part of the penalty that criminal offenders pay for their offenses against society.'"); Cunningham v. Jones, 667 F.2d 565, 566 (6th Cir. 1982). Although Plaintiff has alleged that the isolated incidents in which he received contaminated food, or the perhaps frequent incidents in which his

food was served on damp trays, posed a risk to his health, the Seventh Circuit has dismissed as frivolous a very similar claim:

> Here's just one example [of a frivolous claim raised in the prisoner's complaint: George sued one of the defendants because he saw some particles of food on his plate at dinner, inferred that the dishwasher had malfunctioned, and asserted that this episode placed his health at risk. This does not come within shouting distance of a constitutional grievance under the standard of <u>Farmer v. Brennan</u>, 511 U.S. 825 . . . (1994), and similar decisions.

<u>George v. Smith</u>, 507 F.3d 605, 608 (7th Cir. 2007).

With respect to the claim that Plaintiff is confined to his cell and afforded limited opportunity for outdoor exercise, the confinement of inmates to their cells for twenty-three (23) hours a day does not violate the Eighth Amendment. <u>Argue v. Hofmeyer</u>, 80 F. App'x 427, 429 (6th Cir. 2003); <u>In re Long Term Admin. Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 471 (4th Cir. 1999); <u>see also</u> <u>Coleman v. Bradley</u>, No. 1:07-cv-468, 2007 WL 2461699, at *3 (W.D. Mich. Aug. 27, 2007) (dismissing claim that inmate was confined to his cell from noon to midnight for 30 days); <u>Bagetta v. Carusos</u>, No. 1:07-CV-289, 2007 WL 1577830, at *4 (W.D. Mich. May 30, 2007) (dismissing claim that inmates are confined to their cells on weekdays, because "[t]he federal courts have held that similar and even longer periods of cell confinement do not violate the Eighth Amendment").

With respect to Plaintiff's claims about the inadequate ventilation in his cell, dust, occasional insects, and various plumbing malfunctions, there is no allegation that Plaintiff has suffered more than ordinary discomfort, which does not rise to the

level of an Eighth Amendment violation. See, e.g., Talal v. White, 403 F.3d 423, 427 (6th Cir. 2005) (reversing dismissal of Eighth Amendment claim based on exposure to environmental tobacco smoke in poorly ventilated prison; noting that the objective component requires that "[t]he exposure to smoke must cause more than 'mere discomfort or inconvenience'"); Bomer v. Lavigne, 101 F. App'x 91, 93 (6th Cir. 2004) ("brief inconvenience" of being confined for three days to a cell with no ventilation due to a power outage does not violate Eighth Amendment); Ingram v. Jewell, 94 F. App'x 271, 273 (6th Cir. 2004) (confiscation of prisoner's extension cord used to operate fan in his cell does not violate Eighth Amendment, as inmate did not allege that ventilation in his cell was so inadequate as to fall below "'the minimal civilized measure of life's necessities'"); Jasman v. Schmidt, 4 F. App'x 233, 235-36 (6th Cir. 2001) (affirming dismissal of Eighth Amendment claim where inmate did not allege he was harmed by poor ventilation); Davis v. Crowley, No. 00-1475, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (affirming summary judgment for defendants on claim that strong gas fumes are present in prison ventilation system and enter inmate's cell through the air vent); Pryor v. Cox, No. 97-3912, 1999 WL 1253040 (6th Cir. Dec. 13, 1999) (affirming sua sponte dismissal of Eighth Amendment claim alleging that prisoner "was subjected to bad food, unsanitary conditions, and excessive heat," because prisoner did not allege that he suffered any physical injury); Strable v. Luttrell, No. 97-5411, 1998 WL 894837, at *1 (6th Cir. Dec. 15, 1998) (upholding summary judgment on claim based

on allegedly inadequate ventilation system at prison, because "the plaintiffs cannot show that the defendants consciously disregarded a substantial risk of serious harm to them"); Flowers v. Sundquist, No. 97-6026, 1998 WL 808364 (6th Cir. Nov. 9, 1998) (upholding summary judgment on Eighth Amendment claim; "Although Flowers has provided some lay evidence of poor ventilation at the NCSC and attributes coughing from which he suffers to dust in the air, such evidence fails to provide a sufficient factual basis for a jury verdict in his favor."); Sanders v. Smith, No. 92-6351, 1993 WL 94077, at *1 (6th Cir. Mar. 31, 1993) (affirming summary judgment dismissing Eighth Amendment claim about conditions during six-day confinement in administrative segregation, including inadequate ventilation and roach infestation; "The alleged conditions of confinement, while unpleasant, did not deprive [plaintiff] of 'the minimal civilized measure of life's necessities.'"); Mackey v. Carberry, No. 2:07-cv-43, 2007 WL 2479296, at *5 (W.D. Mich. Aug. 28, 2007) (dismissing claim of poor ventilation in prison and lack of access to proper cleaning supplies; "[T]his prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience."). Courts also have rejected claims that prisoners were housed in dirty cells or exposed to some insects. See, e.g., Spencer v. Bouchard, 449 F.3d 721, 728-29 (6th Cir. 2006) (evidence of continuous exposure to cold temperatures for several months, coupled with "evidence that large quantities of water leaked onto [Plaintiff's] bed whenever it rained or snowed,"

sufficient to raise a triable issue of fact); Geder v. Godinez, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995) (allegations of unsanitary conditions, "including the presence of defective pipes, sinks, and toilets, improperly-cleaned showers, a broken intercom system, stained mattresses, accumulated dust and dirt, and infestation by roaches and rats" not sufficient serious to satisfy the objective component of an Eighth Amendment violation); Wilson v. Schomig, 863 F. Supp. 789, 794-95 (N.D. Ill. 1994) (allegations that plaintiff's "cell contained dirt, dust and roaches, and that his ceiling leaked during rainstorms" are "not sufficiently serious" to violate the Eighth Amendment); cf. Ford v. LeMire, No. 03-CV-10176-BC, 2004 WL 1234137, at *4 (E.D. Mich. June 1, 2004) (noting that, although a spider bite sometimes results in serious medical complications, a delay in treating a bite does not satisfy the objective component of an Eighth Amendment violation where the plaintiff suffered only "minor discomfort and a fever").

As for the various plumbing problems, including occasional faucets that do not work, toilets that do not flush, and overflowing toilets, "'[t]he circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred.'" Spencer v. Boucharad, 449 F.3d at 727 (quoting Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)). Although the complaint alleges intermittent plumbing problems at the Jail, there is no allegation of any undue delay in repairing problems that arise. This condition does not rise to the

level of an Eighth Amendment violation. <u>Gilland v. Owens</u>, 718 F. Supp. 665, 684 (W.D. Tenn. 1989).

The complaint also asserts an Eighth Amendment claim on the theory that some Jail employees were deliberately indifferent to his serious medical need. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." <u>Johnson v. Karnes</u>, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." <u>Id.</u> at 874 (quoting <u>Comstock v. McCrary</u>, 273 F.3d 693, 702 (6th Cir. 2001)); <u>see also</u> <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 895 (6th Cir. 2004) (quoting <u>Estelle v. McGuire</u>, 429 U.S. 97, 104 (1976)) ("The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ' for a serious medical need."). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are

under an obligation to offer medical care to such a prisoner.'" <u>Johnson</u>, 398 F.3d at 874 (quoting <u>Danese v. Asman</u>, 875 F.2d 1239, 1244 (6th Cir. 1989)).

The objective component of an Eighth Amendment claim based on a failure to provide adequate medical care requires that a prisoner have a serious medical need. <u>Blackmore</u>, 390 F.3d at 896; <u>Brooks</u>, 39 F.3d at 128. This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment <u>or</u> one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" <u>Blackmore</u>, 390 F.3d at 897 (emphasis in original); <u>see also</u> <u>Johnson</u>, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" <u>Blackmore</u>, 390 F.3d at 897 (emphasis omitted).[7] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay

---

[7]     The Sixth Circuit elaborated:

These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication. . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."

<u>Id.</u> at 898 (citations omitted).

in treatment." Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Id.; see also Johnson, 398 F.3d at 874.

The Sixth Circuit has emphasized that

> The "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . . . Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was

not addressed within a reasonable time frame." Id. at 900.[8] In those cases, the prisoner may recover for the pain and suffering attributable to the delay. Id. at 899 ("In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.").

The alleged denials of medical care in this case do not rise to the level of a constitutional violation. The complaint alleges that Plaintiff suffered chest pains on April 5, 2006, but there is no allegation that Sergeant Davis or Lieutenant Anderson knew that Plaintiff suffered from asthma or sarcoidosis, believed these chest pains to be related to those conditions, and consciously disregarded that risk. There also is no allegation that Plaintiff was injured by this delay. The allegations about the alleged denial of medical care on April 14, 2006 are similar, with the additional detail that the officers were about to go off duty. Again, there is no allegation that Plaintiff suffered any injury from the delay in alerting the Jail medical department to Plaintiff's symptoms and missing dose of medication.

---

[8]     See also Garretson, 407 F.3d at 797 ("Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals—a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need under Farmer and Napier.").

Finally, Plaintiff's disagreement with the manner in which Jail medical staff treated his lung conditions, including the failure to refer him to a lung specialist, does not violate the Eighth Amendment. See, e.g., Hall v. Tyszkiewicz, No. 01-2106, 2002 WL 169562, at *2 (6th Cir. Jan. 30, 2002) ("Hall's disagreement with the defendants' medical judgment concerning the proper medication and medical aids for his condition does not evidence deliberate indifference."); Street v. Corrections Corp. of Am., 102 F.3d at 816 n.3; Westlake v. Lucas, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

The Court therefore DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted.

II. Appeal Issues

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. The United States Court of Appeals requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal is frivolous. Floyd v. United States Postal Serv., 105 F.3d 274, 277 (6th Cir. 1997). Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must

obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party was permitted to proceed in forma pauperis in the district court, he may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any non-frivolous issue. Id. at 445-46. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but that it has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith, and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. If Plaintiff files a notice of appeal, he must also pay the full

$455 appellate filing fee or file a motion to proceed _in forma pauperis_ and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.[9]

Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken _in forma pauperis_ if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. _Coppedge v. United States_, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. _Id._ It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal _in forma pauperis_. _See_ _Williams v. Kullman_, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any

---

[9]     If Plaintiff is a prisoner when he files a notice of appeal, he is notified that, in _McGore v. Wrigglesworth_, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. However, as this is the third dismissal of one of Plaintiff's cases for failure to state a claim or as frivolous, _see_ _infra_ p. 30, 28 U.S.C. § 1915(g) bars him from taking an appeal under § 1915(b). _Green v. Nottingham_, 90 F.3d 415, 417 (10th Cir. 1996). Therefore, if Plaintiff files a notice of appeal, he is required to remit the entire appellate filing fee within thirty (30) days of filing that notice. If he does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that he has failed to comply with the fee requirements, and that court will dismiss his appeal. It will not be reinstated thereafter even if he does pay the filing fee. _Cf._ _McGore_, 114 F.3d at 609-10.

appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal _in_ _forma_ _pauperis_.

III. Imposition of Restrictions on Filing Privileges

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the third dismissal of one of his cases for failure to state a claim or as frivolous.[10] Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Taylor was, at the time he commenced this action, a prisoner within the meaning of the statute. It is hereby ORDERED that Ray Clifton Taylor not be permitted to file any further actions _in_ _forma_ _pauperis_, during any time he is a prisoner within the meaning of 28 U.S.C. § 1915(h), without first obtaining leave of court, which will not be granted unless he is in imminent danger of serious physical injury. Any action filed by Taylor must be accompanied by the civil filing fee or by allegations sufficient to show that, at the time of filing the action, he is under imminent danger of serious physical injury. Any complaint that does not allege that Taylor is under imminent danger of serious physical

---

[10]     Plaintiff previously filed Taylor v. State of Tenn., et al., No. 07-2348-Ma/P (W.D. Tenn. dismissed for failure to state a claim Dec. 12, 2007), and Taylor v. Tunica County Jail, No. 2:01-cv-00219-NBB (N.D. Miss. Dismissed for failure to state a claim Apr. 29, 2002).
 See supra p. 30 n.9.

injury, or is not accompanied by the civil filing fee, will not be filed and, if filed in error, will be dismissed and the civil filing fee will be assessed.

Plaintiff is cautioned that any attempt to evade this order by filing actions in other jurisdictions that are removed or transferred to this district will result in the imposition of a sanction in the full amount of the civil filing fee.

IT IS SO ORDERED this 27th day of August, 2008.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE